**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JOHN M. ZAZZERA,**

**Plaintiff,**

**Case No. 8:26-cv-01709-MSS-SPF**

**vs.**

**FIRST NATIONAL BANK OF PASCO,**

**Defendant.**

______________________________________/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOHN M. ZAZZERA ("ZAZZERA" or "Plaintiff"), brings this action against Defendant, FIRST NATIONAL BANK OF PASCO ("FNBP" or "Defendant FNBP"), and alleges as follows:

## INTRODUCTION

1. This is an action by Plaintiff against Defendant FNBP for unlawful retaliation after Plaintiff reported suspected violations of federal banking laws, regulations, and compliance obligations to the Office of the Comptroller of the Currency ("OCC"), a federal banking agency, and to FNBP's leadership.

2. Plaintiff brings claims for: retaliation in violation of 12 U.S.C. § 1831j (Count I) and retaliation in violation of Florida's Private Sector Whistleblower Act ("FWA"), §§ 448.101 – 448.105, Florida Statutes (Count II). Each count seeks damages in excess of $50,000, exclusive of interest, costs, equitable relief, attorney's fees and court

costs. Plaintiff seeks all available and applicable legal remedies under such laws, including but not limited to injunctive and declaratory relief, compensatory damages, punitive damages (if deemed warranted), and recovery of his reasonable attorney's fees and costs if he prevails.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding retaliation against Plaintiff in violation of 12 U.S. Code § 1831j.

4. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims are so closely related to the federal claims in this case that they form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's federal and state law claims arise from the same facts and would ordinarily be expected to be resolved in one judicial proceeding.

5. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including employment practices alleged herein, occurred in this district.

6. Defendant FNBP maintains offices in Florida, with its principal corporate office located at 13315 US Highway 301, Dade City, Pasco County Florida, within this judicial district and division.

7. The conduct and adverse action complained of herein occurred in Dade City, Pasco County, Florida within this judicial district and division. Venue is therefore proper within this Court.

8. Further, pursuant to paragraph 10 of the Agreement between FNBP and Plaintiff ZAZZERA, "any action relating to or arising out of this Agreement, shall be the state or federal court situated in Pasco County, Florida," as further verification that venue is proper within this Court.

## THE PARTIES

9. Plaintiff ZAZZERA is, and was at all times material hereto, a citizen and resident of the State of Florida and Orange County.

10. At all times material hereto, Defendant, FIRST NATIONAL BANK OF PASCO ("Defendant FNBP" or "FNBP"), was and is a national banking association within the meaning of 12 U.S.C. § 1813(q)(1)(A), and is chartered and examined by the Office of the Comptroller of the Currency ("OCC"), established pursuant to 12 U.S.C. § 1, et seq.

11. At all times material hereto, Defendant FNBP was and is an "insured depository institution" as that term is defined in 12 U.S.C. § 1813(c)(2), and a Federal Deposit Insurance Corporation ("FDIC") insured bank, being chartered in the State of Florida in 1986, having its principal office in Dade City, Florida.

12. At all times material hereto, Defendant FNBP was a FDIC-insured bank that is a covered insured depository institution subject to 12 U.S.C. § 1831j(a)(1).

13. At all times material hereto, Defendant FNBP was and is a wholly owned subsidiary of Florida Bancshares, Inc., a Florida corporation.

14. At all times material hereto, ZAZZERA was an employee who performed services for Defendant FNBP under the Agreement.

15. At all times material hereto, the Defendant, FNBP was the employer of Plaintiff ZAZZERA.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16. Plaintiff was hired as President & CEO of FNBP, pursuant to a two-year Employment Agreement dated December 16, 2024, extended by and executed with Defendant FNBP's Board of Directors ("the Board").

17. In fact, Plaintiff started working for Defendant the week prior to the executed contract date (December 16, 2024), demonstrated by expense reports and documents pre-dating December 16, 2024. A copy of Plaintiff ZAZZERA's Employment Agreement is attached hereto as Exhibit "A" ("Agreement").

18. Plaintiff was tasked with leading FNBP through a critical transition during sale negotiations.

19. In the course of his duties, Plaintiff uncovered serious malfeasance by the FNBP Board, as well as violations of banking regulations involving FNBP's operations, compliance program, payments business, and Board-level governance.

20. FNBP is required to maintain transaction monitoring, including timely Currency Transaction Reports ("CTR's") and Suspicious Activity Reports ("SAR's")

filings to the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the U.S. Department of the Treasury.

21. FNBP is also subject to "The Travel Rule," a FinCEN-enforced requirement under the BSA that mandates financial institutions pass specific identifying information about both the sender and recipient to the next financial institution for transactions of $3,000 or more.

22. Plaintiff discovered that Defendant FNBP's designated BSA/Anti-Money Laundering ("AML") Officer, Valerie Assad ("Assad") did not maintain adequate oversight or review of transactional activity for FNBP.

23. On June 2, 2025, Plaintiff engaged in protected whistleblowing activity under federal law when he authored a written memorandum to LaTisha Boyd, Assistant Deputy Comptroller, and Melissa Patino, Field Agent, both with the Office of the Comptroller of the Currency ("OCC").

24. The June 2, 2025, memorandum reported concerns regarding FNBP's payments transaction volume, inadequate review and monitoring of transactional activity, potential BSA/AML compliance failures, and risks associated with FNBP's payments business.

25. The memorandum constituted a disclosure to a federal banking agency concerning information Plaintiff reasonably believed evidenced violations of law, rule, or regulation, unsafe or unsound banking practices, and/or gross mismanagement.

26. Plaintiff also included FNBP's Board on the June 2, 2025, disclosure to the OCC, thereby notifying both the federal regulator and FNBP's highest governing body of the FNBP's compliance issues and suspected misconduct.

27. In the June 2, 2025, protected disclosure, Plaintiff reported that Assad had deleted more than 6,000 files, including critical records related to FNBP's payments business and compliance operations, which Plaintiff reasonably believed contained information relevant to FNBP's regulatory obligations. Plaintiff also disclosed the existence of a contract imposing a $2 million reserve requirement that had been established with Fadi Cheikhat, a former FNBP Board Member who owns USAG. Despite this contractual obligation, the $2 million reserve was never collected, preventing the payments program from being properly initiated.

28. Plaintiff further disclosed that previous executives of the Bank were routinely making transactions and payments directly out of the general ledger, bypassing the core banking system of record that regulators monitor. This included approximately $1.65 billion in payments consisting of 246,000 transactions. Plaintiff reasonably believed these practices violated internal control requirements, books and records obligations, and potentially BSA/AML monitoring rules mandated by the OCC and FRB. These actions created significant gaps in audit trails, compliance oversight, and regulatory reporting, raising serious safety and soundness concerns.

29. Thus, the June 2, 2025, memorandum was not merely an internal workplace complaint; it was a formal written disclosure to the OCC concerning suspected banking-

law violations, compliance failures, and unsafe or unsound practices at an insured depository institution.

30. Following the memorandum, on June 3, 2025, Plaintiff and other FNBP executives, met with FNBP's Board Chairman, Ander ("A.P.") Gibbs, and Vice Chairman of the Board Paul Midili ("Midili"), who was also Chair of the Directors Loan Committee, ("DLC") over lunch.

31. At the lunch meeting, Plaintiff and the other FNBP executives discussed an ongoing regulatory examination, pending bank litigation, and several newly uncovered compliance issues.

32. Specifically, Plaintiff and the other executives presented hard-copy folders with documentary evidence of the foregoing, which included:

a) Documentary evidence bearing the signatures of FNBP's Board Chair (Gibbs), Vice Chair (Midili), and its current CEO & President, Paula O'Neil ("O'Neil"), illustrating that the DLC had approved an ACH exposure limit of $500 million for a fintech partner—an amount significantly beyond established policy limits and greater than the Bank's total asset size of $300 million;

b) A contract reflecting a $2 million reserve requirement established by FNBP's former Chief Revenue Officer Mike Mashke ("Mashke");

c) Historical emails revealing that FNBP—along with certain of its Board members and former CEO—were aware that the same fintech partner's

ACH activity, totaling 256,000 transactions representing approximately $1.6 billion, was not being monitored through FNBP's BSA/AML system. This oversight subsequently contributed to FNBP being named as a co-defendant in a lawsuit filed against the fintech company, alleging $10 million in unreimbursed transactions. Although the matter was ultimately settled out of court, proper AML/BSA monitoring would likely have identified the fintech partner's misappropriation of funds much earlier, potentially mitigating FNBP's exposure and reputational risk;

d) The June 2, 2025, Memorandum, notifying the OCC that FNBP's designated BSA/AML Officer (Assad), had deleted 6,087 emails containing critical program information.

e) A loan exceeding $1 million extended to FNBP's Chairman's (Gibbs') daughter without DLC approval and, instead, approved by another FNBP Board member, in violation of Regulation O (12 CFR § 215);

f) Gibbs pressuring Zazzera, through repeated demands and implied job-related consequence, ultimately to purchase 25,000 shares of his (Gibbs) stock at $20 per share (totaling $500,000), stating the proceeds would fund his (Gibbs') daughter's business; and

g) FNBP had paid real estate commissions to a company owned by a Vice Chairman, Midili, for selling FNBP-owned real estate.

33. Gibbs instructed that the findings be prepared for presentation at the next FNBP Board meeting, ostensibly illustrating concern.

34. Following Plaintiff's June 2, 2025, disclosure to the OCC and his June 3, 2025, disclosure to FNBP's Board leadership, Defendant knew that Plaintiff had engaged in protected whistleblowing activity concerning potential violations of federal banking law, unsafe or unsound practices, and compliance failures.

35. Additionally, on June 8, 2025, Plaintiff spoke with OCC Acting Comptroller, Rodney Hood about the ongoing issues with Defendant's payment systems.

36. This communication further confirmed Plaintiff's protected activity and his continuing effort to provide information to a federal banking agency concerning FNBP's compliance failures and unsafe or unsound practices.

37. However, on June 13, 2025, Plaintiff, along with several other executives who reported regulatory and compliance concerns, were terminated by Gibbs, on behalf of FNBP, preventing the presentation to FNBP's full Board of Directors.

38. The temporal proximity between Plaintiff's June 2, 2025, disclosure to the OCC, his June 3, 2025, presentation of supporting evidence to Board leadership, his June 8, 2025, communication with the OCC Acting Comptroller, and his June 13, 2025, termination supports a causal connection between Plaintiff's protected whistleblowing activity and Defendant's decision to terminate him.

39. Defendant's termination of Plaintiff was retaliatory and designed to silence Plaintiff, prevent further reporting to the OCC and the full Board, and avoid additional

scrutiny of FNBP's payments business, BSA/AML compliance failures, Board-level misconduct, and unsafe or unsound banking practices.

40. Plaintiff's reported compliance failures were serious violations of banking regulations. Three months after Defendant terminated Plaintiff's employment, Defendant was subject to an enforcement action by the OCC.

41. On October 16, 2025, the OCC issued a press release announcing it had entered into a Formal Agreement with Defendant.[1]

News Release 2025-102 | October 16, 2025

## OCC Announces Enforcement Actions for October 2025

SHARE THIS PAGE:

WASHINGTON—The Office of the Comptroller of the Currency (OCC) today released enforcement actions taken against national banks and federal savings associations (banks), and individuals currently and formerly affiliated with banks the OCC supervises.

The OCC uses enforcement actions against banks to require the board of directors and management to take timely actions to correct the deficient practices or violations identified.

- Formal Agreement **with First National Bank of Pasco**, Dade City, Florida, for unsafe or unsound practices, including those related to board oversight and corporate governance, strategic and capital planning, Bank Secrecy Act/Anti-Money Laundering (BSA/AML) risk management and suspicious activity reporting, and violations of law, rule, or regulation, including those related to Suspicious Activity Reports and Due Diligence Programs for Correspondent Accounts for Foreign Financial Institutions. (Docket No. AA-SO-2025-46)

Media Contact

Stephanie Collins
(202) 649-6870

## COUNT I
## RETALIATION IN VIOLATION OF 12 U.S.C. § 1831j

42. This is a cause of action by Plaintiff for unlawful retaliation by Defendant FNBP in violation of 12 U.S.C. § 1831j.

1. https://www.occ.gov/news-issuances/news-releases/2025/nr-occ-2025-102.html (last visited Aug. 10, 2026)./

43. This count is pled cumulatively and in the alternative to Count II. Plaintiff therefore repeats, adopts, and realleges the allegations of paragraphs 9 through 41, as if set forth more fully herein.

44. Defendant FNBP is an "insured depository institution" covered by 12 U.S.C. § 1831j(a)(1).

45. Plaintiff is an "employee" covered by 12 U.S.C. § 1831j(a)(1).

46. On June 2, 2025, Plaintiff engaged in protected activity under 12 U.S.C. § 1831j when he authored and transmitted a written memorandum to OCC officials LaTisha Boyd and Melissa Patino concerning FNBP's payments transaction volume, inadequate transaction monitoring, BSA/AML compliance concerns, and deletion of critical program information by FNBP's BSA/AML Officer.

47. Plaintiff reasonably believed that the matters reported to the OCC involved violations of law, rule, regulation, gross mismanagement, unsafe or unsound banking practices, and/or breaches of fiduciary duties affecting FNBP and its federally regulated banking operations.

48. Additionally, Plaintiff reported these concerns and provided supporting documentation to FNBP Chairman Gibbs and Vice Chairman Midili.

49. Plaintiff further communicated with the OCC Acting Comptroller on June 8, 2025, regarding ongoing issues with Defendant's payment systems, thereby continuing his protected activity under federal law.

50. Defendant knew of Plaintiff's protected activity, including his participation in providing information to the OCC and his disclosure of the misconduct described herein, before terminating his employment.

51. Plaintiff's disclosures constituted protected activity under 12 U.S.C. § 1831j.

52. Following Plaintiff's protected activity, Defendant terminated his employment on June 13, 2025, just days after Plaintiff's protected disclosures.

53. Defendant terminated Plaintiff in retaliation for his protected activity, in violation of 12 U.S.C. § 1831j.

54. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered lost wages, lost benefits, and other compensatory damages.

**WHEREFORE**, Plaintiff prays for and requests that this Court enter judgment against Defendant for:

(a) Back pay and benefits from the date of his involuntary termination through the date of trial of this matter;

(b) Prejudgment interest on the above sum;

(c) Compensatory damages for emotional anguish, pain and suffering;

(d) Front pay and future benefits in a sum to be determined by the court;

(e) Any other non-pecuniary damages found due and owing to Plaintiff;

(f) Injunctive relief, if deemed warranted;

(g) If Plaintiff prevails in the instant matter, recovery of Plaintiff's fees and costs under § 448.104, Florida Statutes; and

(h) Any and all such other and further relief as this Court deems just and equitable.

**COUNT II**
**RETALIATION UNDER FLORIDA'S PRIVATE SECTOR WHISTLEBLOWER ACT**

55. This is a cause of action by Plaintiff for unlawful retaliation by Defendant FNBP against him brought pursuant to Florida's Private Sector Whistleblower Act ("FWA"), §§ 448.101 – 448.105, Florida Statutes.

56. Plaintiff repeats, adopts, and realleges the allegations of paragraphs 9 through 41, as if set forth more fully herein.

57. At all times material hereto, Plaintiff was an employee of Defendant FNBP within the meaning of § 448.101(2) of the FWA.

58. At all times material hereto, Defendant FNBP was an "employer" pursuant to § 448.101(3) of the FWA.

59. By virtue of his actions, Plaintiff both "disclosed…in writing" and "objected to" activities, policies, or practices of his employer, FNBP, that were "in violation of a law, rule, or regulation," within the meaning of § 448.102 (1) and (3) of the FWA.

60. Plaintiff's June 2, 2025, written memorandum to the OCC and related disclosures to FNBP's Board leadership constituted written disclosures and objections to violations of law, rule, or regulation, including but not limited to banking regulations, BSA/AML obligations, Regulation O, and related compliance requirements.

61. Defendant FNBP took "retaliatory personnel action" against Plaintiff as defined under § 448.101(5) of the FWA; namely, involuntarily terminating Plaintiff's employment.

62. As a direct and proximate cause of Plaintiff's participation in the whistleblowing activities identified herein, Plaintiff has been damaged by Defendant.

63. As a result of Defendant's conduct set forth herein, Plaintiff is entitled to compensation for any and all lost wages and benefits, and reasonable attorney's fees and costs.

64. Defendant FNBP engaged in retaliation against Plaintiff with malice and reckless indifference to Plaintiff's rights.

65. Plaintiff has suffered damage to his name, reputation and professional career, as well as emotional pain and mental anguish as a direct result of Defendant's unlawful retaliation.

66. Plaintiff has also suffered pecuniary losses as a direct result of Defendant's unlawful retaliation.

67. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff prays for and requests that this Court enter judgment against Defendant for:

(i) Back pay and benefits from the date of his involuntary termination through the date of trial of this matter;

(j) Prejudgment interest on the above sum;

(k) Compensatory damages for emotional anguish, pain and suffering;

(l) Front pay and future benefits in a sum to be determined by the court;

(m) Any other non-pecuniary damages found due and owing to Plaintiff;

(n) Injunctive relief, if deemed warranted;

(o) If Plaintiff prevails in the instant matter, recovery of Plaintiff's fees and costs under § 448.104, Florida Statutes; and

(p) Any and all such other and further relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 10th day of August 2026.

Respectfully Submitted,
***/s/ Marc R. Edelman***

**MARC R. EDELMAN, ESQ.**
Fla. Bar No. 0096342
Sophia L. Walker, Esq.
Fla. Bar No. 1068754
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: 813-577-4722
Fax: 813-257-0572
MEdelman@forthepeople.com
Sophia.Walker@forthepeople.com

C. Ryan Morgan, Esq.
Florida Bar No.:15527
**MORGAN & MORGAN, P.A.**

20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Tel: (407) 418-2069
Fax: (407) 245-3401
rmorgan@forthepeople.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of August 2026, I electronically filed and served a true and correct copy of the foregoing via the Court's CM-ECF to all counsel of record.

*/s/Marc R. Edelman, Esq.*